IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 15, 2015 at Knoxville

**STATE OF TENNESSEE v. KENDRA MAHAN**

**Appeal from the Criminal Court for White County**
**Nos. CR4758 & CR4759    David A. Patterson, Judge**

---

**No. M2014-02534-CCA-R3-CD – Filed November 19, 2015**

---

The Defendant, Kendra Mahan, appeals as of right from the White County Criminal Court's revocation of her six-year probationary sentence and order of total incarceration relative to her guilty-pleaded convictions for attempted introduction of contraband into a penal institution, aggravated burglary, and theft of property valued over $500.00 but less than $1,000.00. The Defendant contends that she was not afforded due process because the trial court failed to make sufficient findings of fact. The Defendant also submits that the evidence presented at the revocation hearing was insufficient to establish that a violation of the conditions of her probation—either failure to pay court costs and restitution or a failed drug test—occurred. Following our review, we affirm the trial court's revocation of the Defendant's probationary sentence, but we remand for entry of an amended revocation order reflecting credit for time served and for correction of the "original sentence length."

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal**
**Court Affirmed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Michael J. Rocco (on appeal), and Brandon S. Griffin (at hearing), Sparta, Tennessee, for the appellant, Kendra Mahan.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Phillip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTUAL BACKGROUND

On May 3, 2011, a White County grand jury indicted the Defendant in Case Number CR4758 for introduction of contraband into a penal institution.  See Tenn. Code Ann. § 39-16-201.  On that same day, the Defendant was also charged in Case Number CR4759 with aggravated burglary and five counts of theft of property of various values. See Tenn. Code Ann. §§ 39-14-103, -105, -403.   The Defendant thereafter entered into a negotiated plea agreement on August 15, 2011, which encompassed both cases.  She pled guilty to attempted introduction of contraband into a penal institution, aggravated burglary, and Class E felony theft.  The remaining charges were dismissed.

In exchange for her pleas of guilt, she received an effective four-year sentence in Case Number CR4759 (concurrent terms of four years for the aggravated burglary conviction and one year for the theft of property conviction) and a two-year sentence in Case Number CR4758.  The sentences for each case were run consecutively, resulting in a total effective sentence of six years as a Range I, standard offender, with "[one] year to serve—released to Teen Challenge [Program]—credit for time at Teen Challenge up to [one] year."  At the conclusion of that program, the remainder of her sentence was to be served on supervised probation. Additionally, the Defendant was required to pay court costs and pay restitution, in a total amount of $20,996.00 to multiple victims and "up to" $500.00 to another victim, as a special condition of her aggravated burglary conviction.

A violation of probation warrant was issued on December 13, 2013, wherein it was alleged that the Defendant violated the conditions of her probationary sentence in the following respects:  failure to inform her probation officer before changing her residence; failure to report to her probation officer; failure to pay all required fees, owing $700.00; and failure to follow special conditions imposed by the court, owing $22,271.50 to the court for costs and restitution to the victims.  Based upon this warrant, the trial court partially revoked the Defendant's sentence on February 13, 2014, ordering her to serve fifteen days in jail after her child was born and "transfer[ring]" her supervision from probation to the Community Corrections Program.  The Defendant initialed each of the twenty-three conditions imposed pursuant to the "Community Corrections Order" and signed the order placing her under community corrections supervision.

On October 17, 2014, a "Violation of Community Corrections" warrant was issued.  This time it was alleged in the warrant that the Defendant violated the conditions of her sentence in the following respects:  failure to obey the law of this state, having been indicted in White County for four counts of passing worthless checks on July 14, 2013, while on probation; failure to pay court costs, owing $1,200.00, and restitution, owing $21,000.00; and failure to remain drug-free, testing positive for amphetamines and oxycodone on September 8, 2014.  A revocation hearing was held.

At the hearing, Community Corrections Officer Daniel Hawkins testified that he supervised the Defendant following her "transfer" to community corrections. He confirmed that the Defendant was supposed to pay $21,000.00 in restitution to the victims as a condition of her sentence and said that, to his knowledge, she had not made any payments towards this obligation. Additionally, with regard to payment of court costs, he had "not received any receipts" from the Defendant. He later clarified that, if she had previously paid while supervised by probation, he would not have knowledge of such.

Ofc. Hawkins testified that he collected a drug test sample from the Defendant on September 8, 2014, and sent it to Redwood Toxicology Laboratory. According to Ofc. Hawkins, the presence of amphetamines and oxycodone was detected in the Defendant's sample. Ofc. Hawkins testified that, when he began supervising an individual, there were standard questions he asked. He said that one such question was "whether or not the person [was] currently using a prescribed medication" and that he asked this question "of all [his] clients." Ofc. Hawkins was then asked, "And if that would have been asked in [the Defendant's] case, would you have noted that in your file?" In response to that question, he stated, "I would, I would ask her to give me proof of, you know, prescriptions." According to Ofc. Hawkins, the Defendant had not provided him with any prescriptions during the eight months of her supervision. He further agreed that the "[f]irst time that [he had] heard of her taking any controlled substance [was] through the drug screen" report.

On cross-examination, Ofc. Hawkins again stated that he had no knowledge that the Defendant was taking any prescribed medications. He further testified that he was not familiar with a drug called "surgiwand" or whether it "would show up as an amphetamine on" a drug screen.

The State elected not to submit any proof regarding the worthless check charges.

The Defendant testified on her own behalf at the revocation hearing. First, she stated that she had made payments towards court costs in this case, and a document showing two payments of $50.00 each was entered into evidence.[1] She then testified that she was taking prescription medications and that those medications were prescribed "earlier" in the year. A document reflecting the Defendant's prescriptions filled with Infinity Pharmacy was entered into evidence. It showed that the Defendant obtained oxycodone by prescription on the following dates in 2014: January 16 (twenty-one pills); January 31 (twenty-one pills); February 17 (fourteen pills); March 6 (fourteen pills); March 20 (fourteen pills); March 31 (fourteen pills); and April 23 (ninety pills). Several

---

[1] We note that the White County Case Number referenced in the document is 93CC1-2011-CR-209.

additional medications were listed, but no evidence was presented regarding these drugs or their contents.

The Defendant was asked about the birth of her child while she was on probation. According to the Defendant, her son suffered from "pyloric stenosis[,]" which required hospitalization "multiple times" and trips to Vanderbilt Hospital in Nashville. She incurred medical bills as a result, paying "a few hundred dollars, even before [the child's] surgery," for his medications. She also said that she had to have surgery "in regards" to the pregnancy. Furthermore, prior to her incarceration on this violation, the Defendant worked at Arby's restaurant making $5.75 an hour, which money she said she used for living expenses and to care for her child. She also claimed that she had sought employment for a second job while working at Arby's, including applying with Steak 'n Shake restaurant. According to the Defendant, she had a job working as a secretary for her father's automobile business if she was granted release.

The Defendant further testified that she had completed the "Teen Challenge Program" with "Reverend Tim McLauchlin" and indicated that she would be willing to go back to that program if offered the opportunity. The Defendant averred that she had already agreed to attend "the six-month extension program" with Teen Challenge before she was "violated." If returned to the Teen Challenge Program, she would be required to attend two hours of class weekly, attend church twice a week, submit to weekly drug tests, and report to her probation officer as instructed, according to the Defendant.

On cross-examination, the Defendant acknowledged that she was placed on probation in June 2011 and that she had only paid $100.00 in court costs since that time. She also confirmed that she had not paid any amount towards the restitution due to the victims of these cases. According to the Defendant, once she graduated from the Teen Challenge Program, she started working for that program in Louisville, Kentucky. However, because she was only making $100.00 a week, she was forced to return home and work at Arby's. The Defendant agreed that she "did quite well" in the Teen Challenge Program but that things later declined after returning home.

The Defendant confirmed that the medication list she provided to the court reflected her prescriptions from January through May 2014 but acknowledged that her positive drug test occurred in September. According to the Defendant, she did not know that she was required to inform Ofc. Hawkins of the prescription medications she was taking when she began supervision with him in February 2014, and accordingly, she did not tell him about them. She likewise agreed that she did not inform Ofc. Hawkins about any of her prescriptions filled while under his supervision. Thereafter, the Defendant asserted that the oxycodone found in her system on September 8, 2014, was from an "old prescription" for that medication, but she could not account for the amphetamines found in her system.

-4-

Based upon this proof, the trial court concluded that the Defendant had violated the terms of her probationary sentence and community corrections supervision, ordering her to serve the "balance of [her] sentence" in confinement. The trial court made the following determination in so ruling:

> THE COURT: On the 13th of February, 2014, Judge Leon Burns signed [an] early release from incarceration. It was to do fifteen days after the baby is born. So different baby obviously.[2]
>
> . . . .
>
> . . . [T]he court is going to keep a promise that it made to you. I believe it was made to you at the time that you were found guilty of your probation violation and placed with [c]ommunity [c]orrections. When there's a violation of [c]ommunity [c]orrections, the response of the court is that you serve the sentence and that's what the court's response is to this.
>
> If you're using controlled substances, amphetamines, while you're pregnant, I can't imagine a good reason for us to be doing other than trying to help those that are—
>
> [DEFENSE COUNSEL]: Your Honor, if I may?
>
> THE COURT: You may.
>
> [DEFENSE COUNSEL]: [The Defendant] . . . wasn't aware she was pregnant until she was brought into the jail—
>
> THE COURT: Well fine.
>
> [DEFENSE COUNSEL]: —and she obviously passed her intake screen.
>
> THE COURT: I understand. I'm just saying at this point, if we know that she's using controlled substances and she has twins and it's a high risk pregnancy,[3] we've been through this on another occasion is what I'm saying. I'm not, I'm not offended by the fact that the [D]efendant is pregnant. I'm not offended by anything other than the lifestyle, which is while on [c]ommunity [c]orrections she's violating her probation with a

---

[2] The Defendant was again pregnant at the time of the revocation hearing: this time with twins.

[3] A letter from the Defendant's gynecologist to that effect was entered into evidence.

clear understanding that she's got a six-year sentence[4] and she's been violated in the past. There isn't an alternative. And so she is revoked to serve her sentence, credit for any time that she's served.

The Defendant perfected a timely appeal from the trial court's ruling.

ANALYSIS

The Defendant submits that the trial court denied her procedural due process by failing to make adequate findings regarding the evidence supporting revocation. The Defendant also asserts that the evidence presented at the revocation hearing was insufficient to support the trial court's decision to revoke her probationary sentence.

Initially, we note that in State v. Bowling, 958 S.W.2d 362 (Tenn. Crim. App. 1997), this court held that a trial court lacks jurisdiction to impose a sentence of community corrections upon a finding that a defendant has violated probation, although the court may impose participation in a Community Corrections Program as a condition of probation. 958 S.W.2d at 364; see Tenn. Code Ann. § 40-36-106(f). Accordingly, we interpret the trial court's February 13, 2014 revocation order as modifying the conditions of the original judgment imposing jail confinement and probation to include participation in the Community Corrections Program as a condition of probation.[5] See State v. Matthew Scott Green, No. E2008-02576-CCA-R3-CD, 2009 WL 3806126, at *3 (Tenn. Crim. App. Nov. 13, 2009) (citing Bowling, 958 S.W.2d at 364).

---

[4] The revocation order signed by the trial judge on December 9, 2014, cites to both cases (with Case Number 4758, a two-year sentence, circled) and indicates an original sentence length of four years, rather than six. There appears to be some confusion on several other documents in the record about the original length of the Defendant's sentence. It is clear from the plea agreement that Case Number 4758 was to be served following completion of service of the four-year sentence in Case Number 4759. The revocation order also only awards credit for time served in the county jail from October 24, 2014, to December 1, 2014. The order, however, does not award the Defendant credit for time served in the Teen Challenge Program. Furthermore, it appears that she served time in the county jail from February 12, 2014 to February 13, 2014, on the partial revocation order. Accordingly, it is necessary for us to remand this case for entry of an amended revocation order to provide the correct original sentence length of six years for both cases and also to reflect the Defendant's time served in the Teen Challenge Program "up to [one] year" in accordance with the plea agreement and any additional time served in incarceration over the course of her sentence.

[5] The Defendant is not entitled to credit for time served on probation supervised by community corrections. See State v. Christopher Schurman, No. M2011-01469-CCA-R3-CD, 2012 WL 1657057, at *2 (Tenn. Crim. App. May 10, 2012) (holding that a probationer who is placed in the Community Corrections Program as a condition of probation is not entitled to sentence credit for time spent under community corrections supervision).

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of her release. Tenn. Code Ann. § 40-35-311(e). Upon finding by a preponderance of the evidence that a defendant has violated the conditions of her release, the trial court "shall have the right . . . to revoke the probation and suspension of sentence" and either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. § 40-35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

A defendant at a revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial. See Black v. Romano, 471 U.S. 606, 613 (1985); Gagnon v. Scarpelli, 411 U.S. 778, 786-90 (1973). However, such a defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s); (2) disclosure of the evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact-finder regarding the evidence relied upon and the reasons for revoking probation. Gagnon, 411 U.S. at 786; Morrissey v. Brewer, 408 U.S. 471, 489 (1972). Pursuant to State v. Liederman, 86 S.W.3d 584, 589 (Tenn. Crim. App. 2002), where the transcript indicates that the trial court made oral findings at the conclusion of the revocation hearing regarding both the grounds for revocation and the reasons for the court's finding, the requirement of a "written statement" is satisfied.

The Defendant asserts that this case is analogous to State v. George P. Fusco, No. M2013-00991-CCA-R3-CD, 2014 WL 296012 (Tenn. Crim. App. Jan. 28, 2014), in which a panel of this court reversed the trial court's revocation of probation and remanded the case "for entry of a written order detailing the evidence [the trial court] relied upon and the reasons for revoking [the defendant's] probation." Id. at *4. In that case, the record reflected "that, in two paragraphs, the trial judge noted his concern with the exacting conditions of [the defendant's] probation but also noted that [the defendant] was required to be in strict compliance with those conditions." Id. However, the trial court "made no other findings of fact regarding what it relied on and the reasons for revoking [the defendant's] probation." Id.

Like the trial court in Fusco, here the trial court did not make any written findings but made oral findings on the record. Unlike the court in Fusco, however, the trial court's findings, although brief, state its reasons for revoking the Defendant's probationary sentence: "If you're using controlled substances, amphetamines, while you're pregnant, I can't imagine a good reason for us to be doing other than trying to help those that are—"; and "I'm just saying at this point, if we know that she's using controlled substances and she has twins and it's a high risk pregnancy, we've been through this on another occasion is what I'm saying." We conclude that the trial court's findings in this case sufficiently state the trial court's reasons for revoking the Defendant's placement on probation under the Community Corrections Program and the ground relied upon—that the Defendant was abusing controlled substances—and, therefore, allow for meaningful appellate review. See, e.g., State v. Kyle Roger Stewart, No. M2014-01309-CCA-R3-CD, 2015 WL 2378988, at *2-3 (Tenn. Crim. App. May 18, 2015) (concluding same).

The Defendant also contends that "the State never adduced evidence that taking drug screens was a condition of [the Defendant's]" sentence, observing that neither Ofc. Hawkins nor the Defendant was asked if this was a condition of the Defendant's community corrections sentence and that "the [S]tate did not introduce any records detailing the conditions of [the Defendant's]" release but, rather, "relied solely on supposition that drug screens are a condition of all probated sentences." The Defendant continues that it was "unclear" from Ofc. Hawkins's testimony whether he ever asked the Defendant about her prescription medications; that Ofc. Hawkins's "never testified that he noted asking [the Defendant about her prescription medications] in his file"; and that the Defendant averred that she was unaware of any requirement to inform Ofc. Hawkins about her prescription medications. Accordingly, she submits that the State failed to establish this violation by a preponderance of the evidence.

First, we believe that the Defendant mischaracterizes Ofc. Hawkins's testimony. Ofc. Hawkins testified that he asked "all [of his] clients" whether or not he or she used

any prescribed medications. Ofc. Hawkins then stated that, if the Defendant responded affirmatively to this question, he would have asked for proof of any prescriptions, which would have been included or "notated" in her file. Contrary to the Defendant's assertions, we do not consider Ofc. Hawkins's testimony to mean that he would have notated in the file that the Defendant responded negatively to said question upon being asked. Ofc. Hawkins's testimony indicates that "all" clients, including the Defendant, were asked this question and that, at no time during the Defendant's supervision, did she ever provide Ofc. Hawkins with proof of any prescriptions, although she continued to have multiple prescriptions filled after her placement with community corrections.

Next, according to the evidence presented at the revocation hearing, the sample collected from the Defendant showed that the presence of amphetamines and oxycodone was detected by the laboratory. The Defendant contends, however, that it was never established that taking drug screens was a requirement of her release. The Defendant's argument ignores the obvious—the rule violation cited in the warrant was that the Defendant failed to remain drug-free as evidenced by the positive test results; it was not the Defendant's failure to submit to a drug test as a requirement of her suspended sentence that supported the violation.

Regardless, on February 13, 2014, the trial court partially revoked the Defendant's probation, ordering her to serve fifteen days in jail after her child was born and placing her supervision under the Community Corrections Program. The Defendant initialed each of the twenty-three conditions imposed and signed the order placing her with community corrections on that same date, and that document is included in the record on appeal. Conditions of her release with community corrections included the following: "(12) I will not use intoxicants (beer, whisky, wine, etc.) or use or have in my possession narcotic drugs or marijuana; or visit places where intoxicants or drugs are unlawfully sold, dispensed or used."; "(15) I will participate in random drug or alcohol testing administered by Community Corrections personnel; time and place to be determined by the Community Corrections Case Officer. It is an offense for a person to intentionally use, or possess with the intent to use, any substance or devise [sic] designed to falsify the results of a drug test."; and "(16) Maintain proper prescription pill count. Not have in possession old or outdated prescription medication."

The Defendant relies on State v. Eva Henry, No. M1999-2582-CCA-R3-CD, 2000 WL 1208313 (Tenn. Crim. App. Aug. 24, 2000), to support her assertion that the State failed to establish that random drug testing was a condition of her suspended sentence. We agree with the State that this reliance is misplaced. In Henry, the defendant was transferred from community corrections to probation, but the record failed to establish when the transfer occurred, whether some of the conditions were imposed as conditions of community corrections or as special conditions of probation, or whether some of the

alleged violations occurred during service of the community corrections sentence or while on probation. 2000 WL 1208313, at *1. The <u>Henry</u> court concluded that the State failed to produce any proof of the conditions of probation imposed by the trial court upon suspension of the defendant's sentences, which was a "fundamental item of evidence," and that the panel was, therefore, "without knowledge as to whether the alleged violations in fact constitute[d] conditions of probation." <u>Id.</u> To the contrary, here, the record established that the Defendant was to remain drug-free, that random drug testing was a condition of the Defendant's placement with community corrections, and that she was not to have in her possession any old or outdated prescription medication.

Ofc. Hawkins specifically testified that the Defendant never provided any proof of prescription medications. However, assuming arguendo that the oxycodone was validly prescribed, the Defendant still had no excuse for the presence of amphetamines in her system. The trial court was within its discretion to determine that the Defendant violated the conditions of her probationary sentence by a preponderance of the evidence based upon her drug test results. It was within the trial court's authority to order the Defendant to serve her original sentence in confinement upon revoking the Defendant's probation. <u>See</u> Tenn. Code Ann. §§ 40-35-310, -311(e); <u>Mitchell</u>, 810 S.W.2d at 735.

Regarding the non-payment of court costs and restitution, the Defendant acknowledges that both she and Ofc. Hawkins testified that this was a condition of the Defendant's release, but she argues that trial court failed to make any written or oral findings about the willful nature of this violation as required. In addition, he Defendant asserts that "the evidence preponderated in favor of [her] hardships and efforts to make payments[,]" relying on her own testimony at the revocation hearing. Notwithstanding, the trial court's findings reflect that its decision to revoke was based solely upon on the Defendant's use of controlled substances, and as stated above, the trial court did not abuse its discretion in so determining. The trial court needed only to find that a revocation of the Defendant's sentence was warranted by a preponderance of the evidence that she violated a condition of her sentence.

Based upon the Defendant's use of controlled substances, as verified by a positive drug test, we conclude that the trial court, pursuant to its discretionary authority, properly revoked the Defendant's probationary sentence and ordered her to serve the balance of her sentence in confinement. She is not entitled to relief.

CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion by revoking the Defendant's probationary sentence and by ordering her to serve the balance of her original six-year sentence in confinement. Accordingly, we affirm the judgments of the trial court. However, consistent with this opinion, we remand solely for entry of an

-10-

amended revocation order to allow credit for time served and to change the "original sentence length" from four years to six years.

 

 

_____
D. KELLY THOMAS, JR., JUDGE